THE DES MOINES GAS COMPANY v. WEST ET AL.

1. **Corporation:** NEGLECT OF STOCKHOLDER: TRUSTEE: FRAUD. The capital stock of a corporation consisted of one hundred thousand dollars, evidenced by one thousand shares of stock, of which A., the president of the company, held seven hundred and sixty-nine shares. The articles limited the indebtedness of the company to twenty-five thousand dollars. In 1871 he borrowed a certain sum of the Newark Savings Bank, pledging seven hundred shares of the stock as collateral, at the same time surrendering his certificates of stock, and receiving in place thereof new certificates, seven hundred being issued to him as trustee, without specifying the *cestui que trust* or character of the trust, and the remainder to him in his own right.' In 1872 bonds of the company to the amount of one hundred thousand dollars were issued, and afterward sold. Afterward the articles of incorporation were amended at a pretended meeting, of which no notice was given, permitting the issuance of bonds to retire the stock of the company, and bonds were issued, secured by deed of trust, which were purchased by the defendant the Charter Oak Life Insurance Company for value, and without notice of the fraudulent acts of A.: *Held,* that the Newark Savings Bank, having the power to control the corporation and failing to do it, and negligently permitting A. to exercise such control, would stand in the same relation to the bondholders as A. himself, and that the bonds issued under the amended articles were entitled to protection.

The Des Moines Gas Co. v. West.

2. ——: BONDS: NEGOTIABILITY OF. The bonds issued and purchased by the insurance company are entitled to protection in its hands, whether they are negotiable or not.

3. ——: STOCKHOLDERS. It was unnecessary that the stockholders should be made parties in this action, to subject them to the superior equities of the bondholders.

4. ——: LIEN OF ATTORNEY: PRIORITY OF LIENS. The attorney for the company would not have a lien upon the funds in the hands of the company at the time of the appointment of a receiver, which would be superior to the lien of the trust-deed executed to secure the bonds.

*Appeal from Polk Circuit Court.*

FRIDAY, DECEMBER 6.

THE petition in this case was filed August 31, 1875, and alleges that plaintiff was duly incorporated in 1864, with a capital stock of one hundred thousand dollars, represented by one thousand shares. The articles of incorporation limited the indebtedness of the company to twenty-five thousand dollars. The affairs of the company were managed by five directors, elected yearly. The petition charges that on the 25th of April, 1873, B. F. Allen was a director and president of plaintiff, and held eighty-five shares of stock in the company. Harry West was secretary, and F. R. West was an officer of the corporation. These persons, it is charged, conspired to cheat and defraud the stockholders of plaintiff by issuing bonds secured by mortgage upon the property of the corporation, and did carry out their fraudulent scheme by issuing one hundred bonds of one thousand dollars each, secured by deed of trust, all dated May 5, 1873.

It is alleged that the charter of the corporation conferred no authority upon its officers to execute the bonds and mortgage, but that Allen, in order to carry out his fraudulent scheme, caused to be recorded upon the company's books the proceedings of a pretended meeting of stockholders, at which the articles of incorporation were so amended as to authorize the issuing of the bonds and the execution of the

mortgage; or new articles of incorporation, conferring such power, were adopted, and the old articles were abrogated.

It is charged that no such meeting of stockholders was, in fact, held.

The pretended record purports to show that Allen and the two Wests, and no others, took part in the proceedings; Allen holding eight hundred and forty-eight shares of stock, and each of the Wests one share.

It is alleged that no notice of the pretended meeting was ever given, and the proceeds of the sale of the bonds were not appropriated to the purpose set out in the mortgage, and no part thereof came into the possession of the company or was devoted to its benefit, but the whole was appropriated by Allen to his own use.

It is charged that the holder of the bonds had full notice of the frauds of Allen and his co-conspirators.

The value of the property of plaintiff covered by the mortgage is averred to be fifty thousand dollars.

The trustee named in the bonds, F. R. West, above named, and all the bondholders known to plaintiff, are made defendants. The cancellation of the bonds and deed of trust, and general relief, are prayed for in the petition.

By an amended petition it is shown that the bonds upon their face purport to be issued by the "Des Moines City Gas Company," which is not the true designation of plaintiff, its corporate name being, "The Des Moines Gas Company."

F. R. West, the trustee, filed a cross-petition setting up the issuing of the bonds and deed of trust of date May 5, 1873, and that the corporation failed to pay the interest due thereon May 1, 1875. The trustee further shows that on the 1st of November, 1872, the gas company issued one hundred bonds, each for the sum of one thousand dollars, which were sold and are now held by purchasers for value. To secure the bonds last named another deed of trust was executed to F. R. West, April 1, 1875, upon all the property of the com-

pany. Default has been also made in the payment of the interest upon these bonds.

The cross-bill prays for an account of the amount due upon the several bonds, and for the sale of the property upon the deeds of trust. The bonds of the oldest series purport to be "first mortgage bonds." The deed of trust securing them was not executed until after the other series were executed.

The Charter Oak Life Insurance Company, and other holders of the bonds secured by the deed of trust first executed, filed a cross-petition showing that the value of all the property of the gas company does not exceed seventy thousand dollars, and that the corporation is now under the exclusive management of the Newark Savings Institution, which holds, as collateral security upon a debt due it from B. F. Allen, now a bankrupt, seventy thousand dollars of the stock of the gas company, which is of no value.

These parties answer the petition of plaintiff, averring the adoption of the amended articles of incorporation under which the gas company had the right to issue the bonds and execute the deed of trust which defendants hold, and that when the bonds were issued Allen owned all the stock of the corporation except five shares. It is also averred that the bonds were put upon the market and sold for cash, and the deed of trust was executed with the knowledge and consent of all the stockholders; and the Newark Savings Institution had knowledge of the sale of the bonds, and its interest, if any, in the stock is equitable, the title thereof being in Allen.

The answer of the trustee and the Charter Oak Life Insurance Company to the cross-petition of the Newark Savings Institution denies the frauds charged pertaining to the adoption of the amended or new articles of incorporation of the gas company. The plaintiff and the savings institution deny the allegations of the pleadings of the adverse parties inconsistent with their pleadings.

Upon the application of the Charter Oak Insurance Company a receiver was appointed in February, 1876, and at the

January Term the cause was tried, and a decree entered holding the bonds secured by the first deed of trust, and held by the Charter Oak Life Insurance Company and other defendants, to be valid, and granting relief accordingly.

The plaintiff appeals.

*J. B. Bissell* and *C. C. Cole*, for appellant.

*Nourse, Kauffman & Co.*, for appellees.

*J. R. Barcroft* and *C. H. Gatch*, for the trustee.

BECK, J.—I. The plaintiff, the Des Moines Gas Company, was organized as a corporation in 1864. Its capital stock
1. CORPORA-
TION: neglect
of stockhold-
er: trustee:
fraud.
was fixed by the articles of incorporation at one hundred thousand dollars, represented by one thousand shares, and the limit of its indebtedness at twenty-five thousand dollars. It assumed authority, under Code, § 1059, "to make contracts, acquire and transfer property, and to possess the same power in such respects as private individuals." The object of the incorporation was the construction of works and laying of pipes to supply the city of Des Moines with gas.

B. F. Allen, one of the original incorporators, and president of the company, owned seven hundred and sixty-nine shares of its stock. In 1871 he borrowed of the Newark Savings Institution two hundred thousand dollars, and pledged seven hundred shares of the stock, with other collaterals, as security upon the loan. After this transaction, which was in July, 1871, Allen surrendered all his certificates of stock, including those so pledged, and new certificates were issued; those representing seven hundred shares were issued to him, as trustee, without specifying for whom or for what fund he held the stock, or in any manner specifying the character of the trust. Eighty-five shares were issued to him in his own right. This number was made up of the sixty-nine shares he had before held and sixteen other shares acquired from some other per-

son. This transaction was in August, 1871. Allen thus held seven hundred shares as trustee, and eighty-five in his own right.

When the certificates of stock to Allen, as trustee, were delivered to the Newark Savings Institution does not appear, further than such transfer was made in 1873, before this amendment of the articles of incorporation of the company was attempted, to which we shall hereafter have occasion to refer. There was nothing on the books of the incorporation showing that the Newark Savings Institution had any interest in the stock or held it.

Notwithstanding the indebtedness of the company was restricted by its articles of incorporation to twenty-five thousand dollars, bonds to the amount of one hundred thousand dollars were issued, bearing date November, 1872. It is highly probable that they were actually issued in 1873, and antedated for some reason demanded by the peculiar practices of Allen in his financial operations. No deed of trust was executed, or at least recorded, to accord with the recitals on the face of the bonds. It was probably discovered that the restrictions in the articles of incorporation would stand in the way of negotiating the bonds. They were deposited in the safe of Allen's bank, until his necessities overcame his caution, when, though as worthless as blank paper, they were every one used to secure large sums borrowed by Allen. Long after the mortgage foreclosed in this case was executed, a deed of trust was given to F. R. West, trustee, to secure these worthless bonds. They cut no figure in this case further than to show the recklessness with which Allen trifled with the rights of others in carrying out his dishonest schemes. It is presumed that the holders of these bonds have no hopes of enforcing them, as they do not appear in this case. But West, the trustee, who appears to have been always the ready instrument of Allen in his schemes of fraud disclosed by the record, insists in his cross-bill upon the validity of these bonds.

Allen, having discovered that, under its articles of incorporation, the gas company could not be made liable for indebtedness in excess of twenty-five thousand dollars, procured the services of an attorney to devise a way of creating a valid debt against it. He was, at this time, its president, and it will be remembered all his stock was pledged to the Newark Savings Institution. It was found necessary, in order to accomplish Allen's purpose, to amend the articles of incorporation of the company, which was done in this manner: The attorney prepared new articles of incorporation, which his clerk copied into the book of the company, together with minutes of a meeting of stockholders, purporting to record the action whereby the new articles were adopted. No notice of this meeting was given, and, in fact, none was held, but the minutes disclosed regular proceedings, and they were duly signed by Allen and his confederates. Thereupon the bonds and deed of trust were executed. As we have shown, seven hundred shares of Allen's stock were transferred to him as trustee. He continued to be the president of the corporation.

The bonds were sent to his banking house in New York city for sale. Accompanying them was what purported to be a copy of the deed of trust securing their payment. The deed of trust recites that the bonds were issued "to retire" the old stock of the company. The copy on which the bonds were sold recites that the bonds were issued for the purpose of completing the gas works and making extensions thereof. The bonds were sold, and the Charter Oak Life Insurance Company and its co-defendants became purchasers for value, and without notice of the fraudulent acts and intentions of Allen and his confederates. The proceeds of the bonds were appropriated to Allen's use, and not one cent thereof ever went into the hands of the gas company.

The main contest in the case is between the owners of the bonds, the Charter Oak Insurance Company and others, and the stockholders of the gas company, the Newark Savings Institution and others. There is no contest as to who are

the holders of the bonds and stock. The ownership of fifteen bonds is not known, and the decree of the Circuit Court provides for the protection of the unknown owners. This provision of the decree will be hereafter referred to. We will proceed to consider the conflicting claims of the holders of the bonds and stock.

It must be admitted that the parties holding the bonds acquired them in good faith and for value, and were not informed of the fraudulent designs and practices of Allen and his associates. On the other hand the Newark Savings Institution acquired the stock without actual notice of Allen's operations, and in no manner participated in his frauds. They are all equally innocent, and equally the victims of the bold and unscrupulous financial adventurer, who, the record shows, had the address to gain credit in three separate schemes upon his interest in the gas company, to an amount in each exceeding its value. His stock he had pledged at its face; the second series of bonds he sold at par; and the first and worthless series he hypothecated for large sums of money. The equities of these victims, so far as they are based upon their innocence and sufferings, are about evenly balanced. But so far as equities arise from their acts and relations to the parties, the same cannot be said. These equities we will now proceed to consider.

It will be remembered that the Newark Savings Institution took Allen's stock as collateral security upon the loan made to him. It permitted him to have uncontrolled management of the stock and of the corporation, and until his failure revealed the paucity of his assets and his tortuous operations, it had made no effort to secure honest and competent management of the gas company. Before the bonds were issued it held in pledge all of Allen's stock, and had the power to prevent the fraud perpetrated by Allen in getting up the amended articles of incorporation, and in issuing the bonds. It well knew that, as the holder of the stock, it had the power to control the corporation. The duty rested upon it to

exercise the power; an omission to do so was negligence. It, in equity, can occupy no different position than Allen himself, having, as the holder of the stock in collateral security, permitted Allen to manage in his peculiar way the corporation. The reply to this position may be made that the savings institution was induced to pursue this course of neglect of duty, as holder of the stock, by confidence in Allen; that for such confidence it ought not to suffer, in view of the fact that the Charter Oak Insurance Company and other bondholders possessed like confidence in him, as is plainly shown by the fact of their purchasing the bonds upon inspection of a false copy of the deed of trust, taking his representation or the representation of his associates to be true. But the positions occupied by the parties respectively are different, and create different equities. The bondholders had no control of the corporation, and had the right to expect the holders of the stock would secure an honest management of its affairs. It was not their duty to attend meetings of the stockholders and elect officers; they had no business there, and could not do these things. The savings institution was charged with such duty, and could have elected honest officers. We conclude that, as it failed utterly to do its duty in this respect, and permitted Allen and his confederates to manage, unquestioned and uncontrolled, the affairs of the gas company, it must be regarded in equity as standing in Allen's shoes, and as having no rights other than Allen would possess if he were before this court claiming to protect the property of the gas company from the deed of trust in order to secure it to himself through stock held by him.

In support of this conclusion we may say that the savings institution entrusted its stock in the hands of Allen, and permitted him to become its trustee, without disclosing the nature of the trust or the *cestui que trust*, and in no way interfered with his management of the gas company in order to secure honesty therein. Surely the savings institution must not now

deny the acts of its agent and trustee. His acts must be regarded as its acts.

Can it be doubted that Allen would not be heard should he come into a court of equity, asking that the bonds and deed of trust be set aside and held for naught, on the ground that they were executed through his own fraud—that the gas company possessed no authority to execute the instruments, and that, under the doctrine of *ultra vires*, they are void? We think not. Equity would say to him: "You cannot protect the property of the corporation, which you own through your shares of stock, from responding to the claims of men whom you have attempted to defraud. If the deed of trust is not enforced you will hold the property, and thus gain by your dishonest acts what you led others to believe you had secured to them." Equity will not be bound by the technical rules of the law, when these rules will permit fraud to triumph. The legal rules which regard a corporation as an artificial person, to be bound only by acts done in accord with its charter, which permit it to hold property as a natural person, and limit the interest of the stockholder therein to his shares, must all go down when they are attempted to be used as instruments of fraud by the dishonest, and stand in the way of equity.

There is no difficulty in this view when it is remembered that in this case equity has full jurisdiction of the gas company, which brings this suit, and of all its property which it seeks to discharge from the lien of the deed of trust, and that the bondholders are all before the court as parties. Of the stock of the company, six hundred and ninety-nine shares are now held by the Newark Savings Institution, or by a trustee for its benefit; one share by the president of the corporation, which, we understand, was assigned to him by the savings institution for the purpose of qualifying him to act as an officer; five shares by the secretary of the company; and all the other shares by Allen. As we understand the record, all the shares except the five last named stood in Allen's name when the

bonds and deed of trust were executed. Equity will extend no protection to the stock held by the savings institution, the president of the gas company, or to that held by Allen.

The five shares held by the present secretary of the gas company were acquired by him after the failure of Allen, when the condition of the company's affairs must have been known at Des Moines. The secretary testifies that he lives in that city. Almost immediately after he acquired the stock he became a director and the secretary of the company. The prior holder of the stock lived at Des Moines, and it does not appear that he ever gave any attention whatever to the management of the corporation, or made any inquiry in regard thereto. The fraudulent proceedings we have detailed were carried on in the city where he lived, and no voice of alarm was raised by him. If he knew of these things, his silence was bad faith; if he was ignorant thereof, it was through negligence. In either case he cannot be protected in his interest in the corporation at the expense of others, who had not equal opportunity to discover the frauds, and who were authorized to rely upon the good faith and diligence of the stockholders and officers of the gas company. The secretary of the company, the present holder of these five shares, stands in no better condition.

The foregoing conclusion we reach upon the facts of this case, if not the reasoning upon which it is based, is, we think, supported by the following cases: *Merchants' Bank v. State Bank*, 10 Wall., 604; *Zabriskie v. The Cleveland, Columbus & Cincinnati R. Co.*, 23 How., 381; *Mead v. Merchants' Bank of Albany*, 25 N. Y., 143; *Barnes v. Ontario Bank*, 19 N. Y., 152; *N. Y. & N. H. R. Co. v. Schuyler et al.*, 34 N. Y., 30.

II. Counsel for plaintiff insist that under the statutes of Iowa the gas company did not possess and could not acquire the power to issue the negotiable bonds involved in this action. We have recently held differently. See *Thompson v. Lambert*, 44 Iowa, 239.

2. ——: bonds: negotiability.

III. It is also insisted that the original articles of incorporation of the gas company prohibit indebtedness to exceed twenty-five thousand dollars, and that the amendment thereto, having been made without authority, is void. The bonds were issued in violation of the charter of the company, and are therefore not valid. The want of power of the company to issue the bonds may be fully admitted, but equity, for the reasons we have above given, will, under the peculiar facts of the case, enforce them.

IV. But it is urged that, as the stockholders are not parties to the action, the property of the gas company cannot be subjected to the superior equities of the bondholders. The rights of the bondholders must be enforced against the property of the corporation, if at all. The stockholders have submitted it to the management of the company's officers. They appear here, and, in the name of the corporation, set up the rights of the stockholders. These rights we hold have been lost to the stockholders by their bad faith and negligence. We discover no reason for holding that the stockholders are necessary parties to this action.

3. ——:
stockholders.

V. Fifteen bonds owned by the Charter Oak Life Insurance Company were not in its possession when the decree was rendered. The decree provides for proper steps to be taken to discover the bonds, and requires, if they are not produced, that security be given before the proceeds of the sale of the property applicable to these bonds be paid to the insurance company. We think the testimony is sufficient to support the finding of the court below that these bonds are the property of the insurance company, and the provisions made in the decree are amply sufficient for the protection of any person having a claim to them.

VI. The abstract upon which the case is submitted to us contains the following statement: "Before the judgment was announced, and before the decree was settled, the plaintiff, the Des Moines Gas Company, by its counsel, claimed that the money and assets in

4. ——: lien
of attorney:
priority of
liens.

the hands of the company and its officers, at the time the receiver was appointed, was not subject to the mortgage, and that the decree should not order a dividend thereof among the bondholders for which the foreclosure might be made; and said counsel also claimed that they had a prior right to said moneys and assets, and that they had a lien thereon for their retainer and services in this cause, as well as for a general balance due them as such counsel, and especially they had a prior right thereto as against the Charter Oak Life Insurance Company and other bondholders, and asked that, in case the court should determine that the property was subject to the mortgage or trust deed, a referee should be appointed to ascertain and report the amount due plaintiff's counsel for all services rendered prior to the appointment of a receiver, and also for all services rendered, and for the general balance due them, as such counsel; and also asked that upon the coming in of such report of the referee the court would order the payment of such counsel fees out of the moneys, accounts, and other assets handed over to the receiver by the officers of the company at the time the receiver was appointed. But the court refused each and all of these requests, to which the plaintiff duly excepted."

The deed of trust conveys to the trustee all the property and rights of every kind, "and all rents, tolls, incomes, issues and profits to be had or derived from the same, or any part or portion thereof."

A question is presented to us involving the rights of the trustee to hold moneys found in the hands of the gas company at the time of the appointment of the receiver, being the proceeds of the income of the corporation, as we understand the facts, after the execution of the deed of trust. Counsel for plaintiff claim a lien upon these moneys for their fees in this case. An attorney has no lien upon money of his client, not in his possession, superior to the claim of a creditor who is seeking to subject it to his debt by legal proceedings. Such lien or a right to the money might exist if

an appropriation or transfer by the client be shown. But the record fails to show either. It shows that the gas company denies the right of the court to appropriate the money to the bondholders, and that the attorneys claim a lien thereon, but nothing more. The attorneys failing to establish a lien upon the money, it must be disposed of either to the gas company or bondholders according to their respective rights.

The income of the gas company is covered by the deed of trust. This money is a part of that income, and has been reduced to the possession of the receiver by proceedings in this case for the purpose of appropriating it to the claim of the bondholders. The right of the bondholders to this fund, as against the gas company, cannot be doubted.

Cases cited by plaintiff's counsel in support of their views upon this point are not applicable, for the reason that they were determined upon facts involving the conflicting rights of creditors asserting liens and claims to incomes of corporations, and the provisions of the deeds of trust in some of the cases are not the same as the one involved in this suit.

In *Galveston Railroad Company v. Cowdry*, 11 Wall., 459, the contest was between the purchasers of the property of a corporation upon judgments and senior mortgages. The court interpreted the mortgages to provide that until demand was made for the income the parties receiving it were not bound to account therefor. No such demand was alleged in the pleadings. In the case before us the pleadings show a demand made for the property covered by the mortgage before suit, and the record discloses that a receiver was appointed into whose hands the moneys in question were paid, being part of the prior income of the gas company. This case is readily distinguishable from the one just cited. *Gilman et al. v. Ill. & Miss. Telegraph Co.*, 91 U. S. (1 Otto), 603, and *Am. Bridge Co. v. Heidlebach*, 94 U. S. (4 Otto), 798, cited by plaintiff's counsel, are cases in which judgment creditors, by proper proceedings, sought to subject the incomes of corporations to their claims. These incomes were earned before

demand, or proceedings were instituted under the mort-
gages. These cases, as well as the other one just cited, are
readily distinguishable from the one before us by the fact that
the creditors contesting the rights of the mortgagees to the
income had instituted proceedings to enforce their debts before
the property and incomes had been taken under the mortgages.
In this case the income of the gas company in question is in
the hands of a receiver. It is claimed by attorneys for ser-
vices rendered in this case. These services were mostly ren-
dered, and of course the indebtedness of the gas company to
them mostly arose, after the money was paid to the receiver.
The claim of the attorneys wholly arose after the commence-
ment of this suit, in which the bondholders seek to subject
the income to their claims. We have seen that the attorneys
have no lien upon the fund. They can have no equitable
claim thereto which is superior to the rights of bondholders.

VII. The decree entered by the court below dismissed the
petition of the trustee without prejudice to the rights of the
holders of the bonds first issued and secured by the second
deed of trust. It is insisted by the attorneys for the gas
company that the dismissal should have been absolute. We
think the decree is correct, in view of the circumstances of
the case. While these bonds have scarcely a semblance of
validity, yet we are not prepared to say that innocent holders
could not enforce them against the gas company, in view of
the fact that its stock is held by Allen and his assignees, who,
as we have seen, are chargeable, so far as their stock is con-
cerned, with liability for his acts, and by another, who is
chargeable with notice of his operations and connection with
the gas company. The point, we think, may well be left for
settlement in other proceedings, if these bondholders see fit to
institute them. But, as the evidence clearly shows that the
value of the assets of the gas company does not equal the
amount of the bonds enforced by the decree in this case, no
such proceedings will probably ever be instituted.

AFFIRMED.

The Des Moines Gas Co. v. West.

SUPPLEMENTAL OPINION.

BECK, J.—I.   A petition for rehearing in this case was filed by plaintiff, which has required us to reconsider the record and the grounds of the foregoing opinion.   While we are well satisfied with the conclusions we have announced, we esteem it proper to present further views in their support, and to make a correction of an error pointed out by counsel in the petition for rehearing.

In the next to the last paragraph of the statement of facts preceding the opinion an error appears touching the pleadings in the case, which is to the effect that the Newark Savings Institution is a party to the suit.   The paragraph should read as follows: "The answer of the trustee and the cross-petition of the Charter Oak Life Insurance Company deny the frauds charged pertaining to the adoption of the amended or new articles of incorporation of the gas company. The plaintiff and the insurance company deny the allegations of the pleadings of the adverse parties inconsistent with their pleadings."

While we will attempt to offer no apology for the error, and do frankly confess that the degree of watchfulness which we ought to have exercised in using the names of the corporations concerned in the action would have saved us from the error of using one name for another, we are well satisfied that no one could have been misled by the opinion into supposing that the savings institution is a party to the suit.   The preceding parts of the statement of facts give the pleadings of the parties, from which it may be seen that the savings institution is not a party.   Other parts of the opinion show the same fact.   The fourth point of the opinion answers an objection based upon the ground that the stockholders of the plaintiff are not parties to this action.   The savings institution, it will be remembered, holds the stock of plaintiff originally issued to Allen.   Very little attention to the opinion will enable the reader to correct the error without a word of

explanation, and we cannot believe that any one, before this correction, could have understood that we intended to state as a fact that the savings institution is a party to the action.

II.    We will here add a few words in support of the doctrines of the foregoing opinion, which, probably, may prove to be the expression in other language of thoughts we have already advanced.

It must be remembered that the contest between the parties involves the property of the plaintiff, the gas company. The plaintiff, a corporation, as the representative of the rights and interests of the holders of its stock, insists that the bonds in question are void, and cannot be enforced against its property. The defendant the Charter Oak Insurance Company, the holder of the bonds, insists that they are valid, and the property of the plaintiff corporation is liable for their payment. The senior counsel for plaintiff, in his argument in the case, well states this thought in the following language: "The leading issues in the case are upon the validity of the bonds, and the priority of right to the property as between the Charter Oak and other bondholders, who claim to be innocent holders of some of the bonds, and the Newark Savings Institution, which is still the holder of the stock, having acquired the same in good faith, long prior to the issuance of the bonds."

The foregoing opinion is based upon the ground, among others, that the Newark Savings Institution has no other rights than would have been held by Allen had he never hypothecated the stock, and attempted to resist, through the gas company, as the owner of its stock, the enforcement of the bonds. We think this conclusion cannot be doubted. Now it must not be forgotten that this is an action in chancery in which the plaintiff, a corporation, is seeking to defeat the bonds in order that the stockholders may enjoy its property. Equity will not reward fraud by setting aside the bonds held by the Charter Oak Life Insurance Company, which is not chargeable with any fraud in their inception, to the end that

the Newark Savings Institution, which stands in Allen's shoes, may have the benefit of the property of the gas company.

It is said that the insurance company is chargeable with notice of the irregularity of the bonds—if you please, of their absolute invalidity. For our present purpose, let this be admitted.

Suppose Allen, after committing all the acts charged, still holds the stock of the gas company, and, through that corporation, as the equitable owner of all its property, was assailing the bonds in order to set them aside, that he might enjoy the property, he, or the plaintiff for him, could not recover by showing that the insurance company, while not a party to the fraud, knew that the bonds were void. Equity would say to him and to the corporation, the plaintiff, which is holding and endeavoring to protect the property for him : "You knew these bonds were void; you put them on the market representing them as valid; the insurance company paid you the amount of their face for them; the money you applied to your own use; you will not now be heard to deny the validity of the bonds for the reason the insurance company knew or might have known that they were void; having received the money on these bonds as a loan, good conscience requires that the property of the corporation be held to pay them."

III.   The second point of the foregoing opinion, it must be admitted, does not sufficiently answer the position of counsel; or rather clearness, in a measure, is sacrificed therein to brevity.

The point made by counsel, as stated in the petition for rehearing, is this: "A corporation for pecuniary profit cannot make a *negotiable* instrument, having the *attribute* of *negotiability*, so that a third person, the holder of it, would have any higher or different rights against the maker than the original payee." In other words, that the insurance company cannot in this case have the protection of the holder of negotiable paper under the law merchant. Now while it is stated in the foregoing opinion that both the insurance company and savings

institution were ignorant of fraud, and had no actual notice of the invalidity of the bonds and stock held by each respectively, the conclusion reached is not based upon the ground that the insurance company was protected under the rules of the law merchant applicable to negotiable paper. It may be conceded that the insurance company takes the place of the party to whom the bonds were issued, or that the bonds were issued to it; but as it was not a party to the fraud, and in good faith advanced its money for the bonds in the way of a loan, which was appropriated to the uses of the equitable owner of the property of the gas company, that owner and his successors, who stand in his shoes, cannot protect the property from liability to the claim of the insurance company. *Thompson v. Lambert*, cited in the first opinion, holds that a corporation, in the absence of any inhibition in its charter or the statutes of the State, may borrow money and execute notes and mortgages therefor, and that a misappropriation by its officers of the money so obtained will not defeat the securities given for it. In the view we take of the case the bonds in question may be enforced, even if they should be held not to be negotiable.

No other question discussed in the petition for rehearing requires further consideration.

AFFIRMED.