109 72
119 687
109 72
d124 433

109 72
125 719

109 72
127 76

109 72
129 486

109 72
f132 479
f133 37

STATE OF IOWA v. C. H. DESMOND, Appellant.

**Rape:** EVIDENCE: *Separate acts.* On a trial for an assault with intent to rape, where indecent acts of defendant towards other girls, at about the same time, though separate and distinct from each other, were parts of a single transaction, proof of them all is admissible to show the intent with which the defendant acted.

**ESCAPE:** *Excluding explanation of.* After the admission of evidence of an attempt to escape from jail, it is error to exclude testimony that the reason of defendant's attempt was not fear of conviction, but because mob violence was threatened, and he feared he would not be protected if he remained in jail.

**HEARSAY.** A witness should not be permitted to say that the person upon whom an assault is charged told her on leaving defendant that the latter "had sprinkled some stuff on himself."

**SECONDARY EVIDENCE:** *Harmless error.* Where a witness for defendant testifies that he had written a certain letter, error in allowing an examination as to the contents of the letter is not prejudicial, where the questions suggesting the contents are all answered in the negative.

**INDICTMENT:** *When assault and battery is involved.* To justify a conviction of an assault and battery under an indictment charging an assault with intent to rape it must be averred in the indictment that the attempt was accompanied with actual violence.

Instructions.  In charging the jury to determine whether the pros-
ecutrix had been sufficiently corroborated the court erroneously
assumed that defendant and prosecutrix were together.

ASSAULT.  Where the crime of an assault is included in the offense
charged in the indictment, it is error to fail to instruct as to what
constitutes such crime.

OMITTING DEFENSE.  Where defendant relies for his defense on the
fact that he was so intoxicated that he was incapable of forming
an intent to commit a crime, an instruction that, if defendant
was of unsound mind or insane, he could not be convicted, but
not referring to the defense of intoxication, except to say that
such a defense was presented, is erroneous.

*Appeal from Poweshiek District Court.*—HON. A. R. DEWEY,
Judge.

TUESDAY, OCTOBER 3, 1899.

THE defendant was convicted of the crime of assault
with intent to commit rape, and from the judgment, which
required that he be imprisoned in the state penitentiary at
Ft. Madison for the term of three years, he appeals.—
*Reversed.*

*S. R. Clute* for appellant.

*Milton Remley,* Attorney General, and *Chas. A. Van
Vleck* for the State.

ROBINSON, C. J.—The indictment charges that "the said
C. H. Desmond on the 8th day of January, 1898, did in and
upon one Ora Redman, a female child under the age of fifteen
years, to-wit, eleven years of age, unlawfully, willfully, and
feloniously make an assault, with the felonious intent then
and there to willfully, unlawfully, and feloniously ravish,
carnally know, and abuse the said Ora Redman by force and
against her will, contrary to law."  The evidence for the state
tends to show that the facts involved in the alleged assault
were substantially as follows:  At the time specified in the
indictment, and for several days prior thereto, the defendant
and his wife and another man and his wife were engaged in

giving free public entertainments in a room used as a hall in the town of Searsboro. The entertainments included music, and discourses upon diseases, and were designed to advertise and aid in the sale of medicines. In the afternoon of the date specified, an entertainment was given, which commenced at half past two o'clock and closed at about four o'clock. The defendant announced that a silver pitcher would be drawn at the meeting in the evening, and distributed tickets to those present. The audience present consisted of a few adults and about twenty children. Among the latter were Ora Redman, aged eleven years, and Edith Wright and Grace Cotter, each of whom was thirteen years of age. The defendant gave them tickets and promised to give them others if they would stay longer. They remained as requested until all persons but themselves and the defendant had left the room. The room was about twenty by forty feet in size, and extended from the street eastward. At the east end was a platform six or eight feet in width, which extended from the south wall northward to a point four feet from the north wall. A curtain, fastened to a wire near the ceiling, dropped to the platform about one foot back of its front edge, but did not extend within four feet of the south wall. When the girls named were asked to remain, they seated themselves on the platform, with their backs to the curtain and their faces towards the public entrance and street. At that time he defendant was near the door, engaged with tickets. The prosecutrix states that, after she and her companions had been at the platform about five minutes, he told Edith to go behind the curtain, and she did so, remaining there with the defendant not more than ten minutes; that they came out together, and the defendant told Grace to go behind the curtain; she went as requested, and was there with the defendant twenty-five minutes; that Ora could not see either of her companions nor the defendant when they were behind the curtain, nor understand anything that was said, although she heard talking. When Edith came out, she

resumed her seat near Ora, and remained there a part of the time Grace was behind the curtain. At that time Edith told Ora that after she was behind the curtain she sat upon a chair; that the defendant told her to lie down on the floor, and she then jumped out. Edith finally left the room, asking Ora to go with her, but she did not do so. About ten minutes later Grace came from behind the curtain, and went out of the room without speaking to Ora. The defendant then told Ora to go upon the platform, and she did so. We need not repeat all that Ora said in regard to what then occurred. It is sufficient to say that he looked at her ticket and gave her another; that he sat down, and asked her to sit on his lap; that she walked to him and sat on one of his knees; that he made an indecent exposure of his person, and put his hand under her clothing on one of her limbs just above the knee, and that she then left him and went out of the room; that he did not try to detain her. The girls complained at once of the treatment they had received, and search was made for the defendant. He was finally found, about 5 o'clock, in the room where the transaction described occurred, seated in a chair on the platform back of the curtain, in a drunken stupor. On his person was found an empty three-ounce vial, at his feet was a bottle in which remained a small quantity of gin, and back of the platform was a gallon jug two-thirds full of port wine. Efforts were made to rouse him, but his condition remained almost unchanged for nearly two hours. During that time he did not recognize his wife, nor comprehend his situation, and for some time after he began to revive he did not seem to recall anything which had transpired. There was some evidence to the effect that he had been drinking liquor during the day, and was somewhat intoxicated during the afternoon.

I. The district court permitted Edith Wright to testify that when she went behind the curtain the defendant told her to sit in a chair, and asked the number of her ticket; that he

laid a newspaper on the floor, and told her to lie down on it; that she then jumped from the platform onto the floor. Grace Cotter was permitted to testify that when she went behind the curtain the defendant told her to sit on his lap, and she did so; that he then unbuttoned her clothes and told her to lie down on the floor, and she did so, and that he then had sexual intercourse with her; that she cried, but did not resist; that after the act was accomplished he told her to sit in his lap, and she did so, and after a time left him and went out of the hall. The defendant complains of the rulings of the court which permitted the introduction of that testimony, on the ground that the offense charged in the indictment could not be proved by showing that the defendant had committed another offense. The case of *State v. Walters,* 45 Iowa, 389, involved the crime of rape; and this court held that evidence of assaults upon the prosecutrix made before the one for which the defendant was tried was admissible to show the intent, but that evidence of assaults made upon another person, having no connection with the offense charged, was not admissible. We said: "It is a general rule that nothing shall be given in evidence which does not directly tend to the proof or disproof of the matter in issue. Evidence of a distinct substantive offense cannot be admitted in support of another offense. Proof of some other felony, committed at a different time and upon or against another person, and having no connection with the crime charged, is not admissible." See, also, *State v. Saunders,* 68 Iowa, 370. There are exceptions to the rule thus stated, as, where knowledge and intent constitute a necessary element of the offense charged. *State v. Jamison,* 74 Iowa, 613; *State v. Slice,* 88 Iowa, 27, and cases therein cited. We are of the opinion that the testimony in controversy falls within the exception to the general rule, if it may not be regarded as direct evidence of the offense charged. The acts of the defendant towards each girl, although in some respects separate and distinct from his acts towards each

of the others, were, in a sense, parts of a single transaction, and proof of the whole was important to show the intent with which he acted towards each girl.

II.   Edith Wright testified that she saw Ora just as she came out, and that Ora said that the defendant had "sprinkled some stuff on himself." The objection of the defendant that it was incompetent was overruled. The state claims that the testimony was admissible, under the authority of *State v. Watson,* 81 Iowa, 383, and *State v. Mitchell,* 68 Iowa, 118, but nothing decided in either case justified the admission of the evidence in question. See *State v. Richards,* 33 Iowa, 420. The argument upon this point is little more than a statement of the claims of the parties respecting it, and we content ourselves with saying that the testimony is not shown to have been admissible.

III.   Harvey Peyton testified as a witness for the defendant. He stated on cross-examination that he had written to the wife of the defendant, and was asked if he did not tell her this; "Just let me know what evidence you want, and it will be forthcoming," or words to that effect. He was also asked if he did not, "about the time of the other trial," write to Mrs. Desmond that he would furnish her with evidence, if she wished it. An objection to each question was overruled, and the witness, in answer to the first question, said that he had no recollection of the matter ,and answered the second question in the negative. It would not have been competent to prove the contents of letters in the manner attempted, without accounting satisfactorily for the absence of the letters; but as each question was answered in the negative, and no further attempt was made to show the contents of the letters, prejudice to the defendant could not have resulted from the questions.

IV.   The wife of the sheriff of Poweshiek county testified for the state that on a certain afternoon, when the defendant was in jail, and his wife was visiting him, she heard a noise in the jail, and thought they were trying to get out;

that she told Mrs. Desmond it was time to go, and opened the door for her to pass out, "but he was following right close after her. He was kind of pushing against me. He ran to the window and went to work again, and I ran outside when he was working, and said to him, 'If you try to come out there, I will kill you.' This was after dark,—eight or nine o'clock in the evening. I saw afterwards the brick had been knocked out from the inside, four brick wide and four brick high." Testimony to the effect that the defendant admitted that he had tried to escape from the jail was given. The defendant showed by his wife that after a former trial she often visited him in jail, and was there the evening he attempted to escape; that within a few days preceding the attempt she had a convesation with him, in which she exhibited to him certain newspaper clippings. She was then asked, "What papers were they?" An objection was made, and the defendant stated that he expected to prove by the witness that, in a conversation with her in the jail within two or three days preceding the attempted escape, she showed him certain inflammatory newspaper articles; that a prisoner named Critchfield was present, and that "what the attitude of the sheriff would be towards the doctor [defendant] as to protecting him from mob violence" was discussed; that Critchfield stated to the doctor, in response to an inquiry from him, that he "did not believe that Sheriff Binegar would make any effort to protect him, and that Binegar would certainly take no chances of injury to himself, but that the doctor would be delivered to the mob." After that statement was made, Mrs. Desmond was asked whether "Critchfield stated to the doctor that, if a mob should come, the sheriff would not protect him, but would surrender the keys of the jail and permit the mob to take him out," but an objection to the question was sustained. She was then asked to state whether, in the same conversation, she did not say to the doctor that, from the statements in the newspapers, she feared a mob would be formed and come

to take him out of jail. An objection to that question was also sustained. The state contends that the excluded evidence was incompetent; that it was drawn out indirectly and inadvertently, and is not relied upon by the state to show guilt. The abstract submitted to us does not sustain the claim thus made. On the contrary, evidence of the attempted escape appears to have been given with deliberation, as tending to show guilt. Since that was true, it was the right of the defendant to show, if he could, that he did not try to escape because he feared conviction on a fair trial, but for the reason that mob violence was threatened, and that he feared that he would not be protected from it if he remained in the jail. The evidence he offered might have proved to be of little or no value, but since the state relied upon the attempt to escape as evidence of guilt, the defendant should have been permitted to show, if he could, that what he did was consistent with his innocence. *State v. Baker,* 110 Mo. Sup. 7 (19 S. W. Rep. 222); *Lewellen v. State,* 33 Tex. Cr. App. 412 (26 S. W. Rep. 832).

V. The court charged the jury that it might find the defendant guilty of assault with intent to commit rape, of an assault and battery, or of an assault, or not guilty, as the evidence should warrant. It was said in *State v. McDevitt,* 69 Iowa, 549, that there may be an assault with intent to commit rape, without an assault and battery. In *State v. McAvoy,* 73 Iowa, 557, it was said that "a defendant can be convicted of an offense distinct from the one specifically charged in the indictment only when such offense is an essential element of that charged, or when it is shown by proper averment in the indictment that a minor offense was in fact included in the one charged. The crime of assault and battery is not necessarily included in an assault with intent to commit rape. * * * To justify a conviction of assault and battery, then, on an indictment charging assault with intent to commit rape, it must be averred in the indict-

ment that the attempt was accompanied by some actual violence to the person of the woman." The indictment in this case does not charge that the assault alleged was accompanied by any force. Hence the crime of assault and battery was not alleged, and the district court erred in charging the jury that it might find the defendant guilty of that offense. The state relies upon the cases of *State v. Kyne,* 86 Iowa, 616; *State v. Pennell,* 50 Iowa, 29; *State v. Peters,* 56 Iowa, 263, and *State v. Hutchinson,* 95 Iowa, 566. But the defendant in each of those cases was charged with having accomplished his purpose, and that necessarily included an assault and battery.

VI. The court failed to instruct the jury in regard to what constitutes the crime of assault. As that was included in the offense charged, it should have been defined.

VII. The eighth paragraph of the charge instructed the jury, in arriving at a conclusion in regard to corroborating evidence, to consider, among other things, "the surroundings and circumstances of the parties being together, and any and all acts connected therewith, and from all these to determine whether the witness Ora Redman had been sufficiently corroborated." This is criticised on the ground that it invades the province of the jury, by assuming that the defendant and Ora Redman were together, when that is not admitted. So far as the paragraph assumed to be true that which was denied, it was erroneous. *State v. Lightfoot,* 107 Iowa, 344.

VIII. The first part of the tenth paragraph of the charge is as follows: "It is urged by defendant, and as a defense, that at the time of the acts complained of he was either of unsound mind, or that he was under the influence of some narcotic or intoxicant to such a degree that he was not responsible for his acts; and evidence has been offered tending to prove that fact." The court then proceeded, at considerable length, to instruct the jury in regard to the

mental condition of the defendant at the time the alleged offense was committed; using the terms, "sound mind," "unsound mind," and "insanity," and stating that if the defendant was at the time "of unsound mind, to that degree that reason was dethroned, and that he had not sufficient judgment with respect to the act, which destroyed his power rationally to comprehend of such act, or that his will was overpowered by reason of this mental condition, then he is not amenable to punishment." The part of the paragraph distinguishes between an unsound mind and the mind of one under the influence of a narcotic or intoxicant, and all the remainder of the paragraph refers to the effect of an act committed if the defendant was of unsound mind at the time, but does not refer to the effect of such an act if committed when he was under the influence of a narcotic or was intoxicated.

There was no evidence of unsoundness of mind, excepting that which might be produced by a narcotic or intoxicating liquor; and there was much which tended to show that the defendant was intoxicated when found but a short time after the alleged offense was commited, and some which tended to show that he was under the influence of intoxicating liquors during the afternoon. Therefore, the chief defense upon which the defendant relied was not presented to the jury. If his condition of mind was such that he was incapable of forming an intent, he was not guilty of the crime charged. *State v. Donovan*, 61 Iowa, 369. The record shows that the omission of the court to present the defense of intoxication may have been highly prejudicial to the defendant. We conclude that, although some of the errors pointed out may not have been prejudicial, others may have been; and it follows that the judgment of the district court must be, and it is, REVERSED.