THE STATE OF IOWA, Appellee, v. CARL HOOVER, Apellant.

**Rape:** CORROBORATION: WHEN IMMATERIAL. A conviction for simple
1 assault operates as an acquittal of a charge for assault with intent to rape, and alleged erroneous rulings and instructions regarding corroborating evidence are eliminated, as no corroborating evidence in case of assault is required.

**Same:** EVIDENCE: STATEMENTS OF PROSECUTRIX. On a prosecution
2  for rape the complaining witness may state that at another
time and place she recognized defendant as her assailant, but
in the absence of words or conduct on his part tending to
point him out as the guilty party she should not be permitted
to give the conversation, unless the same occurred at the time
and place of the alleged crime, or so closely connected there-
with as to be a part of the *res gestæ.*

**Hearsay evidence.** Hearsay evidence is sometimes admissible for
3  the purpose of fixing a date, but this exception to the general
rule should be applied with caution because of the danger
that the jury may give effect to the same as substantive proof
of the fact embodied in the hearsay statement. In the instant
case the evidence is held to have been prejudicial.

*Appeal from Audubon District Court.*— HON. O. D.
WHEELER, Judge.

WEDNESDAY, APRIL 3, 1907.

THE defendant was indicted for assault with intent to
commit rape upon one Lena Peterson. There was a verdict
of guilty of simple assault, and from the judgment entered
upon said finding he appeals.— *Reversed.*

*W. C. Elliott* and *J. M. Graham,* for appellant.

*H. W. Byers,* Attorney-General, and *C. W. Lyon,* As-
sistant Attorney-General, for the State.

WEAVER, C. J.—I. It is argued in behalf of the appellant
that the evidence on part of the State was insufficient to
justify the trial court in submitting a charge of assault with
intent to commit rape to the finding of the jury. Without
attempting to rehearse the testimony of the witnesses, we
have to say that while the case made by the State in this
respect does not seem to have been very strong or conclusive,
there was not, in our opinion, such an entire absence of evi-
dence in support of the charge as to require the court to

withdraw it from the jury, and this assignment of error cannot therefore be sustained.

II.   As the appellant was convicted of simple assault, the verdict of the jury operates as an acquittal of the graver charge of assault with intent to commit rape.   This result of necessity eliminates all question of any alleged error on part of the trial court in its rulings and instructions concerning the necessity of corroborating the testimony of the prosecuting witness. No corroboration was required in order to uphold conviction of simple assault.

1. RAPE: corroboration: when immaterial.

III.   According to the story of the prosecuting witness, she was on her way home from school, and while crossing a bridge at a point about a mile from the schoolhouse she was accosted by a young man who proposed sexual intercourse, and took hold of her and attempted to draw her under the bridge, when she broke away and ran to a neighboring house where she complained of the assault.   No other person witnessed the transaction.   The girl had no acquaintance with the appellant prior to this time, but had seen him on several occasions.   She says that she did not at first recognize him as the person who assaulted her, but after she had broken away from him she did recognize him as the appellant, and spoke to him, saying, " If I know you, your name is Carl Hoover," and that the person thus addressed answered saying that it was not his name.   It may be further stated that the entire evidence of this witness as well as the statement made by her before the court tend strongly to show that she was quite uncertain as to the identity of her assailant.   If to this we add the further fact that the defense was based very largely upon an alleged alibi, the importance of the evidence to which we are about to refer will become very apparent.   Soon after the alleged assault the defendant was arrested and taken to the office of the county attorney where he was confronted with the prosecuting witness.   On the trial in the court

2. SAME: evidence: statements of prosecutrix.

below, the complaining witness being on the stand, her atten·tion was called to her meeting with the appellant to which we have just referred as having taken place in the office of the county attorney, and she was asked to state the conversation which there took place.    Much of this matter was admitted in testimony over objection on the part of appellant.

To make clear the point and force of these objections we quote the testimony, questions, and answers, omitting only the specific objections and exceptions which were all prop-erly preserved.    Referring to this interview, the county at-torney asked the witness:    " Q. What did you say to him ? A. Why, I didn't say anything to him down in your office. Q. Just think about that, Lena, do you remember whether at that time, whether you told him that he was the one, or not ?    A. I didn't tell him; but I told you that it was him. Q. Do you know whether you told me that in his presence, or not ?    A. I told him when he was in there.    I told you when he was in there.    Q. Do you remember what he said ? A. Why, he said to you that he didn't.    That all he had to say that he could prove where he had been.    Q. Do you know whether or not he said that he was not the one ?    A. I didn't know whether he said that.    I don't think he said that.    Q. Did you hear him say it ?    A. No, sir.    Q. When you were in my office there and Carl Hoover was there did you, or did you not, then know whether that he was the person that you saw down at the bridge on Friday night, October 6, 1905, and that you say had hold of you ?    A. Yes; that was him that was in your office that stopped me down on the bridge."

The effect of these rulings was to enable the State to get before the jury the statements made by the complaining witness to the county attorney charging the appellant with being the person who had assaulted her.    Under the rule recognized by this court in the case of *State v. Egbert,* 125 Iowa, 443, the admission of this testimony was prejudicial error.    It would, we think, have been entirely competent to

have shown, if such was the fact, that when the appellant was confronted by the complaining witness she recognized and identified him as her assailant, or that when accused by her of the alleged assault he admitted his guilt or made statements tending to compromise him in that respect; but, in the absence of words or conduct on his part having a tendency to point him out as the guilty person, the State should not be permitted to prove the unsworn and hearsay statements of the complainant or of any other person.     In the Egbert case to which reference is above made the prosecuting witness was permitted to testify that when the sheriff brought the accused into her presence she not only recognized him as the man who assaulted her but that she declared to others that she so recognized him.     In holding that the admission of these statements as evidence was unauthorized we said:  " We know of no authority for admitting proof of the declaration of the prosecuting witness not constituting part of the *res gestæ* with reference to the identity of the defendant with the person committing the crime.    Certainly it is not competent to thus build up a case against the defendant by proving declarations of the prosecuting witness with reference to his identity.    Of course, the fact of complaint by prosecutrix may be shown, and no doubt as a witness she may testify that she recognized the defendant as the person who committed the crime, but what she said is not in itself competent evidence on the question of identity."

It will be observed by reference to the testimony which we have above quoted from the record that it was only after some urging and suggestive questions by the county attorney that the prosecuting witness was brought to state the conversation which the prosecutor wished to bring out.    Even then she does not testify to any admission made by the appellant, but, on the contrary, says in effect that he denied his guilt. There was nothing whatever in that interview so far as it is brought out in this testimony which in any manner tends to corroborate the story of the witness or to identify the appel-

lant as the person who assaulted her.   Her story upon the
stand that the appellant was the person who assaulted her
was, of course, competent, but she cannot be allowed to give
weight to that statement by proving that at some other time
or place, not in court, she pointed him out as the guilty per-
son.   This rule will be understood, of course, as being sub-
ject to an exception where the statements sought to be proved
were made at the time and place of the alleged crime, or so
closely connected therewith as to be a part of the *res gestæ.*

IV.   Among the witnesses examined on the part of the
State was Andrew Anderson, a boy of eight years of age,
who testified in substance that he knew the appellant, and
3. HEARSAY         that he once saw him going along the street
   EVIDENCE.       past the house where witness resided in the
direction of the bridge where the assault is claimed to have
been committed.   He did not attempt to fix the date of this
occurrence.   On cross-examination he said that he did not
know which is east, west, north, or south; did not know the
month or the year at the time of the trial; did not know the
date of his birth-day; did not remember the time when he saw
the appellant go by the house, nor the month in which it
occurred, nor whether it was last summer; but did remember
that it was on Friday.   He further stated that he did not
know what was meant by an oath, nor what was meant by
being a witness; and did not know whether the occurrence
to which he testified took place last summer or last spring,
but that he told his mother at the time he saw the appellant
pass in the road.   Objection to this testimony and motions by
the defendant to strike it out as irrelevant and hearsay were
overruled, and the state thereupon introduced the mother of
the boy as a witness, and she was permitted to testify that on
Friday, October 6, 1905, the date of the alleged assault, and
about the hour of its occurrence, she saw some man whom
she did not know going along the road north past her home,
and she asked her little son, the young witness just referred
to, who the person was, and that he replied to her inquiry

that it was Mike Hoover, the appellant being sometimes called or known as Mike. In overruling the objections to this testimony the trial court said that the evidence was not received for the purpose of establishing the truth of what the boy said; but for the purpose of showing the boy had made some remark of that character, but not as to the truth of the remark, or to the fact that it was Carl Hoover. We are of the opinion that this evidence should not have been admitted, and that the qualifications which the court sought to attach thereto were not sufficient to cure the error. It is to be admitted that hearsay statements are sometimes competent as evidence, when used simply for the purpose of fixing the date of some pertinent fact or transaction. But such limitation was not clearly attached to the admission of the evidence now under consideration. *State v. Dunn,* 109 Iowa, 750; *People v. Mead,* 50 Mich. 229 (15 N. W. 95); *Stewart v. Anderson,* 111 Iowa, 329; *Agulino v. Railroad Co.,* 21 R. I. 263 (43 Atl. 63); *Hill v. North,* 34 Vt. 616; *Earle v. Earle,* 11 Allen (Mass.) 1.

Had the testimony in this case and the restrictions put on it by the trial court come fairly within this exception to the general rule, there would have been no error in the ruling of which the appellant complains. The exception, however, is one that should be applied with considerable hesitancy because of the evident danger that the jury will, in spite of the caution by the court, give effect to such evidence as substantive proof of the fact embodied in the hearsay statement and not limit its effect to its legitimate purpose of fixing a disputed date. It should be further stated that it is ordinarily sufficient for such purpose to prove the fact that a conversation was had upon the subject without relating to the jury the statements made in such conversation, unless same be called for upon cross-examination by the party against whom the evidence is offered. In the case at bar, the very evident inexperience and immaturity of the boy witness was such as to entitle his testimony to very little weight or

influence with the candid mind, and his attempt to relate an event which took place several months before, unaccompanied by any particular fact or circumstance to fix it in his mind, is so indefinite and unsatisfactory that standing alone no court would have any hesitation in pronouncing it entirely incompetent. The testimony of the boy's mother was scarcely more definite than his own. After first answering that she did not remember whether she saw anyone go past her house on the afternoon or evening referred to, and being further interrogated she answered she did see some one go by her house on Friday afternoon, October 6, 1905. She did not recognize him and could not tell whether he was an old or young man, and she did not notice how he was clothed, whether he wore a hat or a cap; but she claims to remember that she asked her boy who the person was, and received from him the answer that it was Mike Hoover.

It must be conceded, we think, by the State that the testimony of neither of these witnesses taken by itself offers any evidence whatever tending to support the theory of the prosecution, and, in our judgment, the effect is in no manner strengthened or increased when we come to consider them together. We might be inclined to say that the admission of this testimony was error without prejudice, if the record as a whole seemed to make a strong and convincing case against appellant; but the story of the prosecuting witness, while entirely credible and candid as to the fact of the assault upon her at the time and place mentioned, is nevertheless marked by much uncertainty as to the identity of the defendant as the guilty person, while, on the other hand, the abili set up in his behalf is supported by such a large number of witnesses of whose credibility there seems to be no fair reason to doubt, that it seems entirely possible that the objectionable evidence to which we refer may have been directly effectual in bringing about a conviction. Some other alleged errors have been argued by counsel, but the points thus raised are covered by

the questions we have just considered, or are of such a character as not to be liable to arise on a new trial.

For the reasons stated, a new trial must be ordered, and for that purpose the judgment of the district court is *reversed.*