STATE OF IOWA, Appellee, v. MONTIVILLE WOODWORTH,
Appellant.

CRIMINAL LAW:   Evidence—Declarations Not Part Res Gestae.
1   Declarations, not part of the *res gestae*, must be met by proper
objection.

   PRINCIPLE APPLIED:   Assault with intent to rape.   A
witness was permitted, without objection, to testify that prose-
cutrix pointed out to him the person who committed the assault
upon her.   He was then asked:   "Who was it?" and over
objection that hearsay testimony was called for, answered:   "It
was the defendant in this case," naming him.   *Held*, not error.

CRIMINAL LAW:   Instructions—Degree of Intoxication Requiring.
2   The mere fact that defendant, prior to committing the offense,
had drunk and at the time of committing it, did drink intoxicat-
ing liquors, without some substantial evidence of its effect upon
him, does not necessitate an instruction on the effect, in law, of
intoxication.

CRIMINAL LAW:   Instructions—Stating Punishment.   It is not
3   necessary for instructions to state the punishment for assault
with intent to rape or simple assault.

INDICTMENT AND INFORMATION:   Instructions—Submitting In-
4   cluded Offenses—Test to Determine.   An indictment being a
pleading, no issue should be submitted not specifically or, from
the nature of the offense charged, necessarily included therein.

*Appeal from Jones District Court.*—HON. F. O. ELLISON,
Judge.

SATURDAY, DECEMBER 19, 1914.

FROM a judgment of conviction for assault with intent to
commit rape, the defendant appeals to this court.—*Affirmed.*

*Clifford B. Paul*, for appellant.

*George Cosson*, Attorney General, and *John Fletcher*,
Assistant Attorney General, for appellee.

PRESTON, J.—The prosecuting witness testified substantially as follows: .

"I am fifteen years old; have a sister named Hazel, aged ten years; I went hazel-nutting November 22nd last; was thirty-five rods from Moyer's; there was thick hazel brush there. Shortly after I came there defendant came up behind me and took hold of my arm. I began to pull away and holler. He pulled me back in the brush further and made me sit down on the ground. I tried to get away and he would not let me; said he would not let me go; told me he was Ben Andrews. I never heard of him. Defendant was the man who was there.

"Said he wanted me to have intercourse with him. Asked him to let me alone. Said he did not have to. Said he would kill me, fix me so I couldn't go home. He took hold of my arm, tried to choke me. Every time I tried to get up he pushed me back on the ground. He pushed me down and made me lie down. He tore my dress. Asked me to have intercourse with him. Threw me down on the ground got on top of me, raised my dress, unbuttoned my dress and clothing. Said if I did not keep still he would knock me over. I tried to get away from him. Said he was going to have intercourse with me. Told him my sister was coming. Let me alone for a while. Had a bottle with him. Said it was whiskey. Wanted me to drink. I would not, so he drank what was left himself. He turned his back and drew his water. I ran toward home and he ran after me and caught me. Made me lie down again. Unbuttoned his clothing and got on top of me. I tried to prevent him. Told him my sister was coming. My sister Hazel came. When she came I stood up and kept backing off and started toward home. We ran toward Moyer's. He ran after us nearly to the road. This dress (Exhibit A) was torn by him and he unbuttoned .it. Defendant said if I would not tell how it happened he had a check for $50.00 and he would send half of it to my father. Said if I did tell he would kill me. Because of the threats

he made I promised not to tell. Found Mrs. Moyer at home and told her soon after I arrived. We then went home and I complained to my mother about the assault. Told my father about the assault. Told my father that afternoon. When I was in Anamosa next morning I met the man who assaulted me and he was the defendant, Mont Woodworth."

She is corroborated by her sister, who testified that as she came up to the place where defendant and prosecutrix were the defendant had his arm around her sister's shoulder; that when the younger sister approached defendant released his hold upon prosecutrix, and the two girls ran to the home of a neighbor.

Defendant was seen in the vicinity of where the crime was claimed to have been committed by a railroad man; and a blacksmith who had a shop about a mile and a half distant from the home of prosecutrix saw defendant at his shop at about four o'clock on the day the crime was alleged to have been committed. At the blacksmith shop there were rumors that a crime of the character of this one had been committed by a person of a certain description, and to the defendant a by-stander said, "That must be you, Mont," to which defendant made no reply, but a short time later walked away.

1. CRIMINAL LAW: evidence: declarations not part *res gestae.*

1. C. P. Atwood, father of the girl assaulted by defendant, testified as a witness in the case and, after describing a search he had made for the assailant of the girl, testified as follows:

"Saw defendant in Anamosa next day. Mamie (prosecutrix) was with me and showed me the man that committed the alleged assault."

Q. "State who that was."

"Objected to as calling for hearsay testimony. The objection was overruled."

A. "It was Mont Woodworth, the defendant in this case."

This ruling of the court is assigned as error.

Appellant cites on his proposition that proof of the declarations of the prosecuting witness not constituting a part of the *res gestae* with reference to the identity of the defendant with the person committing the crime is inadmissible as hearsay: *State v. Egbert,* 125 Iowa 443; *State v. Hoover,* 134 Iowa 17; *Stale v. Stubbs,* 49 Iowa 203.

It will be observed that the witness testified, without objection, that he saw defendant in Anamosa on the next day after the offense is alleged to have been committed, and that the prosecutrix was with him, and that she pointed out the man who had committed the assault, so that this statement was properly before the court and stood without motion to strike. The additional question was then asked, "State who that was," and the objection and answer.

The Egbert case holds that declarations by the prosecutrix to others that she recognized the defendant as the man who committed the assault are not admissible when not a part of the *res gestae.* In this case the only part of the evidence of prosecutrix objected to was as to who the man was who was seen by her and her father in Anamosa. We think there was no error at this point. See *State v. Hoover,* 134 Iowa 17.

The defendant offered an instruction to the effect that evidence has been introduced of the use of liquor and intoxication on the part of the defendant at the time the offense

2. CRIMINAL LAW: instructions: degree of intoxication requiring.

charged in the indictment is alleged to have occurred, and that the defendant's use of liquor or intoxication should be considered as bearing upon his intent to commit the offense, and that if the jury believed from the evidence that at the time the offense charged is alleged to have been committed the defendant was so under the influence of liquor or in such an intoxicated condition as to prevent him from forming the specific intent of assaulting prosecutrix with intent to rape, the jury should acquit of such offense.

This instruction was refused, and of such refusal the

defendant complains. We think there was no error at this point for the reason that there is no evidence in the record that the defendant was intoxicated at the time in question. There is evidence that some time before the alleged assault, when one of defendant's witnesses met him, he had a half pint of whisky, and that witness drank a part of it, and the defendant a part. It does not appear whether defendant or the witness drank the larger part. It is not shown how long before the transaction this occurred. As we understand the record, it must have been about two hours before. The girl testifies that defendant drank what was left in a bottle, but it is not shown whether the quantity was much or little. Another witness testifies to seeing the defendant some time after the transaction, and after the defendant had walked about a mile and a half, who said, "He did not appear to be badly intoxicated." This is all this witness says on that subject. He does not say that the defendant was intoxicated at all. A person entirely sober would not be badly intoxicated, of course. The question is as to the condition of the defendant at the time of the commission of the alleged offense, and, as stated, the evidence is not sufficient to justify an instruction on that subject. The only claim of counsel for appellant is that defendant was using liquor at about the time of the alleged assault.

3. In one of the instructions, the court stated that the statute provides that if any person assaults any female, with intent to commit rape, he shall be imprisoned in the penitentiary not exceeding twenty years, but the court did not state the punishment for a simple assault. There was no necessity for stating the punishment for assault with intent to rape, and it would, perhaps, have been better to have omitted reference thereto; but, as said in *State v. Wilson,* 157 Iowa 698, the error, if any, in stating the punishment, was favorable to the defendant.

3. CRIMINAL LAW: instructions: stating punishment.

4. The court instructed the jury as to assault with in-

tent to commit rape, but it did not instruct as to any lower degree, except simple assault. Appellant contends that the court erred in not instructing as to assault with intent to inflict great bodily injury, and assault and battery. Though not cited by appellant, there are cases holding that under certain circumstances it is error to instruct on assault and battery. See *State v. Welsh,* 73 Iowa 106; *State v. Desmond,* 109 Iowa 72; *State v. Barkley,* 129 Iowa 485.

4. INDICTMENT
AND INFORMA-
TION: instruc-
tions: submit-
ting included
offenses: test
to determine.

Appellant cites *State v. Egbert, supra,* on this proposition. But in that case the indictment charged the act itself to have been committed, with force and violence, and in that case the evidence tended to show violence such as to constitute a battery. The defendant did not ask any instruction on this subject.

The indictment in this case is similar to that in *State v. Desmond,* 109 Iowa 72, and it seems to be the rule in cases of this character that the crime of assault and battery is not necessarily included in an assault with intent to commit rape, and that, to justify a conviction of assault and battery on an indictment charging assault with intent to commit rape, it must be averred in the indictment that the attempt was accompanied by some actual violence to the person of the woman. *State v. Desmond, supra.*

And it was there said, the indictment does not charge that the assault alleged was accompanied by any force, hence the crime of assault and battery was not alleged. And cases are cited in the Desmond case where the crime charged was rape, that is, that the defendant had accomplished his purpose, which necessarily included an assault and battery. Such was the charge in the Barkley case, *supra.* In the Welsh case, *supra,* the indictment charged that defendant made an assault and beat and bruised, etc.

We are of opinion that under the indictment in this case the court was not required to submit to the jury the question

of assault with intent to inflict great bodily injury or assault
and battery.

The judgment of the district court is, therefore—*Affirmed*.

LADD, C. J., EVANS and WEAVER, JJ., concur.